{¶ 65} For the following reasons, I respectfully dissent from the majority opinion. I conclude the trial court abused its discretion when it determined that the grant of permanent custody to the Cuyahoga County Department of Children and Family Services ("CCDCFS") was in the best interest of the child.
 {¶ 66} In her appeal, the mother does not contest that one of the four conditions under R.C. 2151.414(B)(1) exists. Accordingly, I will limit my dissent to the requirement that the grant of permanent custody be in the best interest of the child. As stated by the majority opinion, when a trial court determines the best interest of a child, it is to consider "all relevant factors" including, but not limited to, the five listed under R.C. 2151.414(D). Because I disagree with the majority opinion under each of the five factors, I shall address my differences separately.
 R.C. 2151.414(D)(1): Child's interaction with others. *Page 18 {¶ 67} The evidence in the record reveals that the child enjoys the mother's company and even recognizes that the appellant is her mother. Additionally, the mother arrives on time or early for her weekly visits with her child and by all accounts, the visits go well. Although the mother is mentally retarded and does have problems reading and writing, the mother is a high school graduate who shows the capacity to learn, participates in her parenting classes and reported regularly, and on time, for her classes at Project Learn. Additionally, when the child became sick while living with her mother, her mother appropriately accompanied the child to the hospital in an ambulance. The child was later determined to be fine, in good shape, and being fed.
 {¶ 68} Though the majority points out that the mother's relatives either do not want custody of the child or were not approved as a placement, the majority ignores the fact that the out-of-town investigation revealed that Jimmy Butterworth could become appropriate for custody with counseling. Moreover, the majority claims that the child's foster parents would like to adopt the child. This contradicts the guardian ad litem's report, which demonstrates that the foster mother vacillates between wanting to adopt the child and not being sure if she can handle the commitment. The mother, on the other hand, has never vacillated. The mother has expressed an overwhelming desire to get her child back and provide a stable home for the child.
 {¶ 69} The child's case plan identified reunification with the mother as the ultimate goal. In accordance with that goal, the mother complied with all the *Page 19 
requirements of her case plan and demonstrated a powerful urge to learn and to become a successful parent. If reunification was in fact the ultimate goal, the trial court should not have determined that permanent custody was in the best interest of the child. The child's interaction with her mother belies that conclusion.
 R.C. 2151.414(D)(2): The wishes of the child. {¶ 70} Guardian ad litem Stephen DeJohn ("DeJohn") testified on behalf of the child, who was too young to express her wishes. DeJohn recommended permanent custody because of the following findings: mom is mentally retarded and doesn't read well, mom has little concept of time, mom's parenting mentor determined that mom is not competent in the necessary skills to keep the child healthy and safe, and mom has a legal guardian who handles her legal matters.
 {¶ 71} While these are all factors that the trial court properly considered during its hearing, other factors should also have been considered. DeJohn repeatedly made the argument that the mother would not be able to administer periodic medicine if the child were sick because of her hearing deficit and her time conception problem. However, the mother did show an understanding of time: she made all visits with her daughter and reported to her Project Learn classes either on time or early. Moreover, the mother is a graduate of Glenville High School, where on her own accord, she reported to and from school. The remainder of DeJohn's concerns were being addressed by the mother. She was making progress in her parenting classes and had acquired a new hearing aid. Accordingly, it is my *Page 20 
conclusion that DeJohn's findings do not support the conclusion that permanent custody is in the best interest of the child.
 R.C. 2151.414(D)(3): Custodial history of the child. {¶ 72} The majority opinion correctly points out that CCDCFS filed a motion for permanent custody on November 22, 2005, after the child had been in CCDCFS's custody for one year, one month, and twenty-two days.
 {¶ 73} Nonetheless, this case appears to be more suited for a planned permanent living arrangement. "A `planned permanent living arrangement' is defined as a placement that gives legal custody to an agency without terminating parental rights and that allows the agency to make an appropriate placement, including foster care or other placement." In reA.B. et al., 110 Ohio St.3d 230, 2006-Ohio-4359; R.C. 2151.011(B)(26). Pursuant to R.C. 2151.353(A)(5), the court can order a planned permanent living arrangement "if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child." Id.
 {¶ 74} Why the CCDCFS never moved for a planned permanent living arrangement for the child I cannot say. In situations like this, where the mother is doing everything in her power to become a suitable parent and acquire custody of her child, termination of parental rights should not be our first choice. *Page 21 
 R.C. 2151.414(D)(4): Need for a legally secure permanent placement. {¶ 75} I disagree wholeheartedly with the majority's conclusion that "the mother's mental retardation is so severe that it makes her unable to provide an adequate permanent home for the child at the present time." While the mother has a great deal of weaknesses, she also has strengths, such as consistently working hard to become a suitable parent. Additionally, the mother has never had a substance abuse issue or any involvement with the criminal justice system. Moreover, there is no guarantee that by severing the mother's parental rights, the child will remain in a legally secure permanent placement. The guardian ad litem's report indicates that the foster mother vacillates between wanting to adopt the child and not wanting to take on the responsibility at her age. This is not a good indicator of a secure household.
 {¶ 76} On the other hand, the mother has complied with her case plan, has never wavered in her desire to parent her child, and has diligently worked with the CCDCFS. Based on this alone, I conclude that the trial court abused its discretion when it determined that permanent custody was in the best interest of the child.
 R.C. 2151.414(D)(5): Factors under (E)(7) to (11) {¶ 77} None of these factors are relevant to the instant matter.{¶ 78} I find that the trial court's decision to terminate the mother's parental rights was not supported by competent, credible evidence. Accordingly, I would conclude that the trial court abused its discretion when it determined that permanent *Page 22 
custody was in the best interest of the child. I would therefore sustain the mother's sole assignment of error and reverse the decision of the trial court. *Page 1 *Page 1